593 A.2d 906

**CROWN-GLOBE, INC.**

v.

**GRENOBLE MILLS, INC. and Grenoble
Knitwear, Inc., Appellants.**

Superior Court of Pennsylvania.

Submitted June 3, 1991.

Filed July 31, 1991.

William E. Master, Reading, for appellants.

Eugene C. Lamanna, Reading, for appellee.

Before ROWLEY, President Judge, and HUDOCK and MONTGOMERY, JJ.

ROWLEY, President Judge:

Grenoble Mills, Inc. (Grenoble Mills) and Grenoble Knitwear, Inc. (Grenoble Knitwear) appeal from the order of November 15, 1990 denying in part their post-trial motions and entering judgment on the verdict in favor of Crown–Globe, Inc. (Crown–Globe). On appeal, the only issue for our consideration is whether the trial court erred in exercising in personam jurisdiction over appellants. After reviewing the record, we conclude that the trial court properly exercised jurisdiction over appellants; therefore, we affirm the final judgment in favor of appellees.

Appellants are foreign corporations with their principal places of business in New York, New York and Fyffe, Alabama. Appellee is a Pennsylvania corporation with its principal place of business in Shoemakersville, Pennsylvania. On March 18, 1981, Grenoble Mills and Crown Knitting Mills Company (Crown Knitting), a Pennsylvania corporation, of which appellee is a successor by merger, entered into a stock redemption agreement pursuant to which Crown Knitting agreed to sell to Grenoble Mills 4.5 shares of Grenoble Mills' common stock. In return, Grenoble Mills was to pay $100,000 at closing and four annual installments of $100,000 each. Payment was to be made at Crown Knitting's principal place of business or at such other place as Crown Knitting specified. In addition, the agreement contained the following provision:

> This Agreement is being delivered and is intended to be performed in the Commonwealth of Pennsylvania and shall be construed and enforced in accordance with and governed by its laws.

On March 8, 1985, the parties entered into a subsequent agreement which by its terms cancelled the first agreement. Pursuant to this agreement, the abovementioned 4.5 shares of stock, as well as an additional 10.5 shares, was to be transferred to Grenoble Mills in exchange for promissory notes co-signed by Grenoble Mills and Grenoble Knitwear totalling $500,000. Grenoble Mills and Grenoble Knitwear

also jointly agreed to pay the $100,000 installment due on March 18, 1985 pursuant to the original agreement.

On April 22, 1988, appellee filed an action against appellants in the Court of Common Pleas of Berks County to recover $81,149.13 due under the two abovementioned agreements. Appellants filed preliminary objections alleging, *inter alia*, a lack of in personam jurisdiction. After the trial court denied appellants' preliminary objections,[1] a nonjury trial was conducted. The trial court entered a verdict in favor of appellee. On October 5, 1990, appellants filed post-trial motions. The trial court granted the motions in part, but denied the motion challenging the trial court's exercise of in personam jurisdiction. The verdict was then modified and final judgment was entered in favor of appellee. Appellants filed this timely appeal.

Appellants contend that the trial court erred in exercising in personam jurisdiction over them. We disagree. A court may exercise in personam jurisdiction over a nonresident if two requirements are met: (1) jurisdiction is authorized by the state's long-arm statute and (2) the exercise of jurisdiction meets constitutional standards of due process. *Kenneth H. Oaks, Limited v. Josephson*, 390 Pa.Super. 103, 568 A.2d 215 (1989). Pennsylvania's long-arm statute authorizes a court to exercise jurisdiction over nonresidents " 'to the fullest extent allowed under the Constitution of the United States' and jurisdiction may be based 'on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.' " *Id.*, 390 Pa.Superior Ct. at 105–06, 568 A.2d at 216 (*quoting* 42 Pa.C.S. § 5322(b)). Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the exercise of personal jurisdiction over a nonresident defendant is permitted if "the defendant has 'certain mini-

---

1. If appellee had filed an election that the order denying appellants' preliminary objections be deemed final, appellants would have had to file a timely appeal from that order or their objection to the court's jurisdiction would have been waived. *See* Pa.R.A.P. 311(b)(1), (d)(1)(ii). Because appellee did not file an election, the challenge to jurisdiction has been properly raised in this appeal. Rule 311(d)(2).

mum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer*, 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278 (1940) ].' " *Eastern Continuous Forms, Inc. v. Island Business Forms, Inc.*, 355 Pa.Super. 352, 354–55, 513 A.2d 466, 467 (1986) (*quoting Calder v. Jones*, 465 U.S. 783, 787, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804, 810 (1984)).

Where, as here, an interstate contractual obligation is at issue, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Kenneth H. Oaks, supra*, 390 Pa.Superior Ct. at 106, 568 A.2d at 217 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528, 540 (1985). Although entering into a contract is not in and of itself sufficient to establish minimum contacts, "negotiations prior to the contract, its contemplated future consequences, the terms of the contract and the parties' actual course of dealing must be evaluated" to determine whether the nonresident defendant purposefully availed itself of the privilege of acting within the forum state. *Kenneth H. Oaks, supra*, 390 Pa.Superior Ct. at 106–07, 568 A.2d at 217.

In the present case, pursuant to the first agreement,[2] appellants were to pay to appellee $100,000 annually for four years. In addition, appellants were to provide monthly and annual financial statements to appellee. Clearly, this was a continuing contact with Pennsylvania, rather than merely a single, random act. Also, by agreeing to the choice of law provision in the first agreement, appellants purposefully availed themselves of Pennsylvania law. The agreement also specified that it was delivered and intended

**2.** We do not agree with appellants' assertion that, because the second agreement cancelled the first agreement, the first agreement should not be considered in our determination of whether appellants have sufficient contacts with Pennsylvania. To the contrary, the fact that the parties entered into more than one agreement reveals a continuing relationship between the parties and reinforces the conclusion that appellants are subject to the jurisdiction of Pennsylvania courts.

to be performed in Pennsylvania. Because the basis of appellee's cause of action against appellants was the allegation that appellants failed to perform, the cause of action arose in Pennsylvania. Furthermore, correspondence between the parties reveals that, during negotiations for the second agreement, the parties communicated by telephone and mail and appellants' representative attended a conference in Pennsylvania.

Additionally, exercise of jurisdiction over appellant would not offend traditional notions of fair play and substantial justice. The contacts which appellant has with Pennsylvania, outlined above, are "purposeful and continuous enough such that appell[ant] could reasonably have anticipated 'being haled into court' here." *Kenneth H. Oaks, supra,* 390 Pa.Superior Ct. at 108, 568 A.2d at 218 (*quoting World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). For the above reasons, we affirm the order of the trial court and the final judgment entered in favor of appellee.

Final judgment affirmed.