## Cull v. Cabot Corp.

*John N. Zervanos, Steven B. Jensen, Alicia D. Butler* and *Allen M. Stewart,* for plaintiffs.
*Neil S. Witkes,* for defendant.

SHEPPARD JR., *J.,* May 3, 2001—Defendant Cabot Corporation has filed preliminary objections to the com-

plaint of plaintiffs, Rose and James Cull. For the reasons set forth, this court is issuing a contemporaneous order overruling the objections, in part, and sustaining the objections, in part.

## BACKGROUND

Cabot Corporation was the owner of a beryllium manufacturing facility in Hazleton, Pennsylvania (plant). The plant was built by the Beryllium Corporation of America in 1957 and was operated by BCA and its successors until 1981.[1]

Plaintiffs contend that the manufacturing processes at the plant introduced respirable beryllium fumes and dust into the environment in violation of recognized regulatory standards. Cabot allegedly was aware of these violations and engaged in the following reckless and negligent conduct:

• Operating the plant near a residential community;

• Operating the plant without proper pollution or emission control devices;

• Permitting the discharge of dangerous and unhealthful levels of beryllium dust;

• Violating applicable local, state and federal laws and regulations; and

• Failing to monitor the levels of beryllium dust.

The plaintiffs also assert that Cabot engaged in a campaign to conceal the adverse health effects of the plant by denying the seriousness of the health risk posed by the level of beryllium found in the plant's vicinity.

---

1. In 1968, BCA and Kawecki Chemical Co. merged to form Kawecki-Berylco Industries Inc. Cabot Corp. subsequently acquired KBI, changed its name to Cabot Berylco Inc. and, in 1982, merged it into Cabot Corp. Cabot Corp. and each of its predecessors are referred to herein as "Cabot."

The plaintiffs live in proximity to the plant and have filed a class action suit on behalf of themselves and those residents who lived within a six-mile radius of the plant during its operation. According to the complaint, the plaintiffs and the class they seek to represent have been exposed to beryllium from the plant and are at risk of developing chronic beryllium disease (CBD)[2] and various other diseases, including lung cancer and respiratory ailments. On this basis, the plaintiffs plead two counts for medical monitoring, the first based on negligence and the second based on strict liability. In its objections, Cabot contends that the complaint is legally insufficient and inadequately specific.[3]

## DISCUSSION

### I. *The Plaintiffs' Second Count Is Legally Insufficient Because Pennsylvania Does Not Recognize a Cause of Action for Medical Monitoring Based on Strict Liability*

For the purposes of reviewing preliminary objections in the form of a demurrer, "all well-pleaded material,

---

2. CBD is a granulomatous disease of the lungs in which the patient develops a cell-mediated immune response to the beryllium. The formation of the granulomas causes tissue to thicken, impeding the flow of oxygen between the lungs and the circulatory system. CBD is known for its latency period, which may extend from six months to 20 years or longer.

3. Cabot also maintains that the entire complaint should be dismissed because the plaintiffs failed to attach a verification. Since the plaintiffs have now filed verifications, this court need not consider this objection. See *Lewis v. Erie Ins. Exchange,* 281 Pa. Super. 193, 198-99, 421 A.2d 1214, 1217 (1980) (construing Pennsylvania Rule of Civil Procedure 1024 liberally to allow amendment adding verification to complaint).

.

factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 942 (Pa. Super. 2000). A court should sustain an objection to legal sufficiency only under limited conditions:

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. . . . Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999).

Here, Cabot contends that an action for medical monitoring cannot be based on strict liability and, thus, the plaintiffs' second count is legally insufficient. In *Simmons v. Pacor Inc.,* 543 Pa. 664, 674 A.2d 232 (1996) our Pennsylvania Supreme Court adopted the position taken by the Third Circuit in *In re Paoli Railroad Yard PCB Litigation,* 35 F.3d 717 (3d Cir. 1994), and unanimously recognized a common-law cause of action for medical monitoring:

"[U]nder the facts of this case and despite the absence of physical manifestation of any asbestos-related diseases, that the plaintiffs should be entitled to such regular medical testing and evaluation as is reasonably necessary and consistent with contemporary scientific principles applied by physicians experienced in the diagnosis and treatment of these types of injuries." 543 Pa. at 679, 674 A.2d at 239 (quoting *Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 380, 752 P.2d 28, 33 (1988)).

The elements required for this cause of action were refined in *Redland Soccer Club Inc. v. Department of the Army,* 548 Pa. 178, 696 A.2d 137 (1997):

"(1) exposure greater than normal background levels;

"(2) to a proven hazardous substance;

"(3) caused by the defendant's negligence;

"(4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease;

"(5) a monitoring procedure exists that makes the early detection of the disease possible;

"(6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and

"(7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles." 548 Pa. at 195-96, 696 A.2d at 145-46. See also, *Guillory v. The American Tobacco Co.,* no. 97 C 8641, 2001 WL 290603 at *7 n.3 (N.D. Ill. March 20, 2001) ("[m]ost states which recognize medical monitoring claims require the elements as set forth by the Supreme Court of Pennsylvania" in *Redland*).

Cabot challenges the plaintiffs' cause of action for medical monitoring based on strict liability on the grounds that a claim for medical monitoring requires proof of negligence and cannot be based on strict liability.[4]

---

4. Cabot also contends that, even if a strict liability medical monitoring cause of action were permitted, the plaintiffs have not alleged that the plant's operations constituted an ultrahazardous activity, as required for a strict liability claim.

Plaintiffs acknowledge that Pennsylvania "has not specifically addressed the question of whether strict liability, as opposed to negligence, will support a claim for medical monitoring relief." Plaintiffs' memorandum at 3. As a result, the plaintiffs base their claim on *Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998), in which, the plaintiffs contend, the Third Circuit "anticipated that the Pennsylvania Supreme Court *would* recognize claims such as strict liability as a basis for recovering on a medical monitoring theory." Plaintiffs' memorandum at 3 (citing *Barnes*, 161 F.3d at 152 n.31).

A close examination of *Barnes* reveals no evidence to support the plaintiffs' contention. The *Barnes* court considered what statute of limitations applies to the plaintiffs' medical monitoring claims, which were based on both negligence and strict liability. The court determined that a two-year statute of limitations would apply to a negligence medical monitoring claim. To be thorough, the court "assume[d] without deciding that the Pennsylvania Supreme Court would allow . . . strict products liability to be the underlying theory of liability in a claim for medical monitoring," and noted that the statute of limitations applicable to a strict liability claim was two years. 161 F.3d at 152 n.31. On this basis, the court concluded that, "[t]o the extent that strict products liability or an intentional tort can act as the underlying theory of liability for a medical monitoring claim, the applicable statute of limitations would still be two years." 161 F.3d at 152. This does not establish that the Third Circuit has recognized a medical monitoring cause of action based on strict liability or has held that the Pennsylvania Supreme Court would do so.[5]

---

5. Indeed, the *Barnes* court noted that "[u]nder *Redland,* a plaintiff must prove that he was exposed to a proven hazardous substance as a result of the defendant's negligence." 161 F.3d at 152.

The plaintiffs submit several policy justifications that should allow their strict liability-based claim to proceed and maintain that "Cabot has identified no meaningful distinction between a claim for medical monitoring founded on negligence, and one founded on strict liability." Plaintiffs' memorandum at 3. None of these policy reasons however, justify ignoring the Pennsylvania Supreme Court's test, which so clearly indicates that a defendant's negligence is an essential element of a medical monitoring claim. This is especially true given the limited recognition of medical monitoring as a cause of action.[6] As a result, regardless of any shortcomings in Cabot's policy arguments, this court cannot conclude that a cause of action for strict liability-based medical monitoring is permitted. Thus, plaintiffs' second cause of action is stricken.[7]

---

6. Courts in the majority of states have rejected medical monitoring as a cause of action. See *Badillo v. American Brands Inc.*, 16 P.3d 435, 438-39 (Nev. 2001) (noting that, at most, only 17 states plus the District of Columbia have recognized a cause of action for medical monitoring). Of the courts that have recognized medical monitoring, it appears that most have required negligence to establish the cause of action. Compare *Petito v. A.H. Robins Co.*, 750 So. 2d 103 (Fla. Dist. Ct. App. 1999) (requiring proof of negligence to establish claim for medical monitoring), and *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970 (Utah 1993) (same) with *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424 (W. Va. 1999) (allowing medical monitoring claim based on strict liability).

7. Because this court finds that Pennsylvania does not recognize a cause of action for medical monitoring based on strict liability, there is no need to considered Cabot's argument that the complaint does not allege an ultrahazardous activity.

## II. *Count One Is Sufficiently Specific*

Pennsylvania Rule of Civil Procedure 1028(a)(3) permits preliminary objections based on insufficient specificity in a pleading. To determine if a pleading meets Pennsylvania's specificity requirements, a court must ascertain whether the facts alleged are "sufficiently specific so as to enable [a] defendant to prepare [its] defense." *Smith v. Wagner,* 403 Pa. Super. 316, 319, 588 A.2d 1308, 1310 (1991). See also, *In re Barnes Foundation,* 443 Pa. Super. 369, 381, 661 A.2d 889, 895 (1995) (" '[a pleading] should formulate the issues by fully summarizing the material facts,' . . . and '[a]s a minimum, a pleader must set forth concisely the facts upon which [the] cause of action is based' "). Allegations of fraud are held to an even higher standard. Pa.R.C. P. 1019(b). See also, *Martin v. Lancaster Battery Co. Inc.,* 530 Pa. 11, 18, 606 A.2d 444, 448 (1992) (an allegation of fraud must "explain the nature of the claim to the opposing party so as to permit the preparation of a defense" and be "sufficient to convince the court that the averments are not merely subterfuge"); *Maleski by Taylor v. DP Realty Trust,* 653 A.2d 54, 65 (Pa. Commw. 1994) (to determine whether fraud has been pled with particularity, a court must "look to the complaint as a whole").

Cabot's objections to the complaint's specificity are without merit. The plaintiffs allege that Cabot owed them the duty to ensure that the plant did not cause the plaintiffs to be exposed to toxic levels of beryllium and that Cabot breached this duty through seven specific acts. Complaint at ¶¶32-34. In addition, the plaintiffs' allegations that they were exposed to toxic levels of beryllium,

that Cabot operated without proper pollution control equipment and that Cabot's actions were in violation of existing law are sufficient to allow Cabot to prepare a defense to the complaint. *Id.* at ¶¶20, 23.

Similarly, the allegations of fraud are sufficiently particular.[8] Paragraph 21 of the complaint alleges the following:

"Cabot fraudulently concealed the adverse health effects to which they exposed plaintiffs and those similarly situated through an active public relations campaign that denied the seriousness of the health risk for those living in the neighborhood surrounding the Hazleton facility. This public relations effort, which sought to convince the public that only levels of beryllium that exceeded the applicable regulatory standards for *workplace* exposure were dangerous, was undertaken together with Brush Wellman Inc., another beryllium manufacturer. Together, Cabot and Brush Well[man] conspired to hide their knowledge regarding the true extent of the hazards of beryllium exposure, by publicly proclaiming that no worker had ever developed beryllium disease at exposures below applicable workplace standards, despite their knowledge of contrary evidence."

These allegations are sufficient to allow Cabot to prepare a defense and to convince the court that these allegations are more than mere subterfuge. Cf. *Martin,* 530

---

8. As an initial matter, the complaint does not include a cause of action for fraud or fraudulent concealment, obviating the need to plead all of the elements for either of those causes of action. Nonetheless, Pennsylvania Rule of Civil Procedure requires that all *averments* of fraud be averred with particularity.

Pa. at 18-19, 606 A.2d at 448 (allegations of fraud were sufficiently particular where they set forth events that happened "regularly"); *Maleski,* 653 A.2d at 65 ("a plaintiff is not required to plead evidence in his or her complaint, and therefore, need not allege all of the factual details underlying the claim of fraud").

In summary, the plaintiffs may proceed on their negligence-based claim for medical monitoring. The objections to Count I are overruled.

## CONCLUSION

Count I is complete and sufficiently specific. Because Pennsylvania does not recognize a cause of action for medical monitoring based on strict liability, however, the plaintiffs' second count is legally insufficient and must be stricken.

This court will enter a contemporaneous order consistent with this opinion.

## ORDER

And now, May 3, 2001, upon consideration of the preliminary objections of defendant Cabot Corporation to the complaint, the plaintiffs' response thereto, the respective memoranda and in accord with the opinion being filed contemporaneously with this order, it is hereby ordered that:

(1) The objections asserting legal insufficiency of Count II—Strict liability/medical monitoring are sustained, and Count II is stricken; and

(2) The remaining objections are overruled.

(3) The defendant shall file an answer to the complaint within 20 days of the date of this order.