William **BARNES**, et al.

v.

THE **AMERICAN TOBACCO COMPANY, INC.,** et al.

No. CIV.A. 96–5903.

United States District Court, E.D. Pennsylvania.

Oct. 10, 1997.

Stephen A. Sheller, Sherrice A. Knisely, Sheller, Ludwig & Badey, Philadelphia, PA, Thomas E. Mellon, Jr., Mellon, Webster & Mellon, Doylestown, PA, Arnold Levin, Jonathan Shub, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, Julia W. McInery, Coalie and Van Sustern, Washington, DC, Gary Robert Fine, Rodham and Fine, P.A., Fort Lauderdale, FL, Dianne M. Nast, Mary Ann M. Cooke, Roda and Nast, P.C., Lancaster, PA, Clifford E. Douglas, Evanston, IL, for Plaintiffs.

Edward F. Mannino, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, Peter S. Greenberg, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Defendant American Tobacco Co.

Hugh R. Witing, Jones, Day, Reavis & Pogue, Cleveland, OH, Gerhard P. Dietich, Morton F. Daller, Tracy Canuso Nugent, Daller Greenberg & Dietrich, Fort Washington, PA, for R.J. Reynolds Tobacco Co.

Morton F. Daller, Tracy Canuso Nugent, Daller Greenberg & Dietrich, Fort Washington, PA, for RJR Nabisco, Inc.

Edward F. Mannino, James Lewis Griffith, Virginia Lynn Hogben, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, Gerhard P. Dietrich, Daller, Greenberg & Dietrich, Fort Washington, PA, for Brown & Williamson Tobacco Corp.

Judy L. Leone, Dechert, Price & Rhoads, Philadelphia, PA, Thomas Finarelli, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, PA, for B.A.T. Industries P.L.C.

Judy L. Leone, Robert C. Heim, Christine C. Levin, Ronni Ellen Fuchs, Dechert, Price & Rhoads, Philadelphia, PA, for Philip Morris, Inc., Phillip Morris Companies, Inc.

Howard M. Klein, William J. O'Brien, Conrad, O'Brien, Gellman & Rohn, P.C., Philadelphia, PA, Edward A. Greenberg, Gerhard P. Dietrich, Daller Greenberg & Dietrich, Fort Washington, PA, for Lorillard Tobacco Co., Inc., Lorillard, Inc.

Judy L. Leone, Dechert Price & Rhoads, Philadelphia, PA, Madeline M. Sherry, Stephen J. Imbriglia, Heckler, Brown, Sherry and Johnson, Philadelphia, PA, for U.S. Tobacco Co., UST, Inc.

Howard M. Klein, William J. O'Brien, Conrad, O'Brien, Gellman & Rohn, P.C., Philadelphia, PA, for The Tobacco Institute, Inc.

Joseph M. Fuller, Jr., Patrick W. Kittredge, Gary M. Marek, Kittredge, Conley, Elson, Fullem & Embick, Philadelphia, PA, for Council for Tobacco Research–U.S.A., Inc.

Mark E. Squires, J. Kurt Straub, Abrahams, Lowenstein, Bushman & Kauffman, Philadelphia, PA, for Liggett Group, Inc., Liggett & Myers, Inc., Brooke Group, Ltd.

Matthew L. Myers, Nat. Ctr. for Tobacco Free Kids, Washington, DC, for American Heart Ass'n, American Cancer Soc., American Lung Ass'n.

## MEMORANDUM

NEWCOMER, District Judge.

Presently before this Court are Defendants' Motion to Enforce Jury Demand, and plaintiffs' response thereto, and defendants' reply thereto. For the following reasons, this Court will grant defendants' Motion.

## I. Introduction

Plaintiffs,[1] proceeding as the named representatives of a class of approximately one to two million Pennsylvania residents who smoke cigarettes,[2] have filed suit against defendants,[3] seeking the establishment of a medical monitoring fund. In their Second Amended Complaint, the plaintiffs have only asserted one claim against defendants—a claim for medical monitoring. Plaintiffs have requested a jury trial in their complaint. The defendants have likewise filed demands for a jury trial. Despite their demand for a jury trial, plaintiffs contend that this case should be tried to the Court because their medical monitoring claim is an equitable, injunctive claim.

In response to plaintiffs' request to have this case tried to the Court, the defendants have filed a motion to enforce their demands for a jury trial. In general, defendants argue that they are entitled to a trial by jury because (1) the injury for which plaintiffs seek relief—alleged increased risk of latent diseases—is one for which an adequate remedy at law exists and (2) the remedy that plaintiffs seek is money. Plaintiffs rejoin that defendants have no right, nor do they, to a jury trial because they assert an equitable claim and request equitable relief.

## II. Discussion

The Seventh Amendment to the United States Constitution provides that "[i]n Suits at common law, where the value exceeds twenty dollars, the right of trial by jury shall be preserved." U.S. Const. Amend. VII. The phrase "Suits at common law" refers to "'suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] admin-

istered.'" *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990) (quoting *Parsons v. Bedford,* 28 U.S.(3 Pet.) 433, 447, 7 L.Ed. 732 (1830)). Since the merger of law and equity under the Federal Rules of Civil Procedure, see Fed.R.Civ.P. 2, the Supreme Court of the United States has carefully preserved the right to trial by jury where legal rights are at stake. Indeed, the Supreme Court noted, in *Beacon Theatres, Inc. v. Westover,* that "'[m]aintenance of the jury as a fact finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" 359 U.S. 500, 501, 79 S.Ct. 948, 951, 3 L.Ed.2d 988 (1959) (quoting *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935)).

■ "To determine whether a particular action will resolve legal rights, [the Court must] examine both the nature of the issues involved and the remedy sought." *Terry,* 494 U.S. at 565, 110 S.Ct. at 1344. "'First, [the Court must compare] the [ ] action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [the Court must also] examine the remedy sought and determine whether it is legal or equitable in nature.'" *Id.* (quoting *Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)). The Supreme Court has explained that the "second inquiry is the more important [prong] of [a court's] analysis." *Id.* (citation omitted).

In applying the first part of the test, the *Terry* Court has stated that "'[t]he Seventh Amendment question depends on the nature

1. The plaintiffs are William Barnes, Ciaran McNally, Catherine Potts, Norma Rodweller, Barbara Salzman and Edward J. Slivak.

2. Pursuant to Federal Rule of Civil Procedure 23(b)(2), this Court, by Order dated August 22, 1997, certified the following class:

    All current residents of Pennsylvania who are cigarette smokers as of December 1, 1996, and who began smoking before age 19, while they were residents of Pennsylvania.

3. The defendants are The American Tobacco Company, Inc., R.J. Reynolds Tobacco Company, RJR Nabisco, Inc., Brown & Williamson Tobacco Corporation, Philip Morris, Inc., Philip Morris Companies, Inc., Lorillard Tobacco Company, Inc., Lorillard, Inc., The Tobacco Institute, Inc., The Council for Tobacco Research–U.S.A., Inc., Liggett Group, Inc., Liggett & Myers, Inc. and Brooke Group, Ltd. Numerous other defendants have either been dismissed by Order of this Court or the parties have stipulated to their voluntary dismissal.

of the issue to be tried rather than the character of the overall action.'" *Id.* 494 U.S. at 569, 110 S.Ct. at 1347 (quoting *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970)). There is no dispute that a cause of action for medical monitoring did not exist in 1791; admittedly, the Third Circuit only predicted that the Pennsylvania Supreme Court would recognize this cause of action in 1990, *In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829 (3d Cir.1990) (*Paoli I*), and the Pennsylvania Supreme Court did not officially recognize medical monitoring as a viable cause of action until 1996. *Simmons v. Pacor, Inc.,* 543 Pa. 664, 674 A.2d 232 (1996).[4] In the absence of an 18th-century medical monitoring claim, this Court is instructed to "look for an analogous cause of action that existed in the 18th century to determine whether the nature of [a medical monitoring claim] is legal or equitable." *Terry,* 494 U.S. at 566, 110 S.Ct. at 1345.

Upon careful consideration of the possible analogous suits, the Court concludes, in agreement with defendants, that the most analogous cause of action is a negligence action for future medical expenses. As explained by the Pennsylvania Supreme Court, the basis for a medical monitoring claim is negligence[5] on the part of the defendant in exposing the plaintiff to a hazardous substance. *Redland,* 548 Pa. 178, 696 A.2d 137. A negligence-based claim for future medical expenses was an action at law for personal injury in the 18th century, and today, a negligence-based claim for future medical expenses is also an action at law. Based on this observation, it clearly would not be inappropriate for this Court to conclude that plaintiffs' medical monitoring claim, which is extremely similar to a negligence-based claim for future medical expenses, raises primarily legal issues. Although this reasoning is facially appealing, the Court must explore the issues that are raised in a suit for medical monitoring more deeply in order to properly dispose of the instant issue before the bar.

Defendants are not wrong to argue that the modern common law claim of medical monitoring closely resembles a negligence-based claim for future medical expense. In order to prove your entitlement to medical monitoring, the Supreme Court of Pennsylvania requires plaintiffs to demonstrate that they were exposed to hazardous substances due to the defendants' negligence. Thus, the underlying theory of liability for a medical monitoring claim is the legal claim of negligence. Plaintiffs do not refute that negligence is an underlying theory of liability for a medical monitoring claim; indeed, they argue that strict products liability and intentional exposure to a hazardous substance can also act as theories of liability for medical monitoring—two theories of liability which implicate legal rights.

■ Applying the Supreme Court's *Terry* analysis, it would appear that the "nature of the issue" to be tried under a medical monitoring claim is legal as opposed to equitable. As noted above, the possible underlying theories of liability for a medical monitoring claim are legal. Because these theories of liability

---

**4.** In *Redland Soccer Club, Inc. v. Department of the Army,* 548 Pa. 178, 696 A.2d 137, 146–47 (1997), the Pennsylvania Supreme Court has recently set forth the elements that a plaintiff need prove in order to prevail on a common law claim for medical monitoring:

    (1) exposure greater than normal background levels;
    (2) to a proven hazardous substance;
    (3) caused by the defendant's negligence;
    (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease;
    (5) a monitoring procedure exists that makes the early detection of the disease possible;
    (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and

    (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.
The Court explained that "[p]roof of these elements will naturally require expert testimony." *Id.*

**5.** The Court recognizes that plaintiffs maintain, in their omnibus response to defendants' pending summary judgment motions, that intentional torts and strict products liability can act as the underlying theories of liability for a medical monitoring claim. The Court also notes that defendants dispute this contention. This issue, however, need not be presently decided in order to dispose of the instant motion; instead, the Court will rule on this issue in the summary judgment context.

are legal, it appears that the attendant affirmative defenses would also be legal; for example, a defendant sued in negligence can raise the defense of contributory or comparative negligence. Moreover, the injury that a person claims under a medical monitoring cause of action is "the cost of the medical care that will, one hopes, detect that injury." *Redland*, 696 A.2d at 144 (quoting *Paoli I*, 916 F.2d at 850–51). This injury is similar to a claim for damages to a person that could be asserted in a traditional negligence or strict liability action. *Ross*, 396 U.S. at 533, 90 S.Ct. at 735. In actions for damages to persons and/or property, the parties are historically entitled to a trial by jury. *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d Cir.1994). Based on these foregoing observations, the first line of this Court's Seventh Amendment *inquiry* weighs in favor of finding that defendants have a right to a jury trial.

It is under the second line of inquiry, which is the more important inquiry in this Court's Seventh Amendment analysis, that plaintiffs make their most persuasive argument that their medical monitoring claim is an equitable claim for which there exists no right to a jury trial. To begin, plaintiffs argue that the relief they seek, in the form of a court-supervised medical monitoring program, is equitable in nature. In contrast, defendants, rehashing an argument advanced in their opposition to plaintiffs' first motion for class certification, argue that plaintiffs' medical monitoring program "is a request for the payment of money for future medical damages." (Defs.' Mem. Enforce Jury Demand at 5). In essence, defendants, once again, argue that a medical monitoring claim can never be characterized as injunctive. This Court, however, has already addressed this issue and has concluded otherwise. In this Court's first class certification opinion, this Court distinguished between medical monitoring claims which can be characterized as pursuing monetary damages, and those which can be characterized as seeking only injunctive relief:

> The Court finds that it may properly certify a medical monitoring claim under Rule 23(b)(2) when the plaintiffs seek such specific relief which can be properly char-

acterized as invoking the court's equitable powers. *See Day*, 144 F.R.D. at 336; *see also Fried v. Sungard Recovery Services, Inc.*, 925 F.Supp. 372 (E.D.Pa.1996). In reaching this decision, the Court perforce rejects defendants' argument that a medical monitoring claim can never be characterized as injunctive.

The dispositive factor that must be assessed to determine whether a medical monitoring claim can be certified as a Rule 23(b)(2) class is-what type of relief do plaintiffs actually seek. If plaintiffs seek relief that is a disguised request for compensatory damages, then the medical monitoring claim can only be characterized as a claim for monetary damages. In contrast, if plaintiffs seek the establishment of a court-supervised medical monitoring program through which the class members will receive periodic examinations, then plaintiffs' medical monitoring claim can be properly characterized as claim seeking injunctive relief.

In *Day*, Judge Spiegel cogently articulates the fine distinction between a medical monitoring claim that seeks monetary relief in the form of compensatory damages and a medical monitoring claim that seeks injunctive relief in the form of a court-supervised medical monitoring program. Judge Spiegel explains:

> Relief in the form of medical monitoring may be by a number of means. First, a court may simply order a defendant to pay a plaintiff a certain sum of money. The plaintiff may or may not choose to use that money to have his medical condition monitored. Second, a court may order the defendants to pay the plaintiffs' medical expenses directly so that a plaintiff may be monitored by the physician of his choice. Neither of these forms of relief constitute injunctive relief as required by Rule 23(b)(2).

> However, a court may also establish an elaborate medical monitoring program of its own, managed by court-appointed court-supervised trustees, pursuant to which a plaintiff is monitored by particular physicians and the medical data produced is utilized for group stud-

ies. In this situation, a defendant, of course, would finance the program as well as being required by the Court to address issues as they develop during the program administration. *Under these circumstances, the relief constitutes injunctive relief as required by Rule 23(b)(2).*

*Day,* 144 F.R.D. at 335–36;[] *see also Fried,* 925 F.Supp. at 374 (implying that under medical monitoring case law, a creation of a medical monitoring program would be equitable in nature). Based on Judge Spiegel's insightful distinction, it is apparent that relief requested under a medical monitoring claim can be either injunctive or equitable in nature.

To determine whether the named plaintiffs in this case seek equitable relief under their medical monitoring claim, plaintiffs' specific request for relief under this claim must be closely scrutinized. Plaintiffs seek the establishment of a court-supervised program through which the class members would undergo periodic medical examinations in order to promote the early detection of diseases caused by smoking. This portion of plaintiffs' request is the paradigmatic request for injunctive relief under a medical monitoring claim.

*Arch v. The American Tobacco Co., Inc.,* 175 F.R.D. 469, 483 (E.D.Pa.1997).

Based on this prior opinion, and in step with the current state of law with respect to medical monitoring, the Court reaffirms its prior determination that a medical monitoring claim can be characterized as seeking injunctive relief. Coincidentally, the Pennsylvania Supreme Court has also recently adopted the position that the use of a medical monitoring fund/trust is an appropriate exercise of a court's equitable powers. *Redland,* 696 A.2d at 142 n. 6. In *Redland,* the Pennsylvania Supreme Court approvingly cited the following quote from the Supreme Court of New Jersey: "In our view, the use of a court-supervised fund to administer medical-surveillance payments in mass exposure cases ... is a highly appropriate exercise of the Court's equitable powers." *Id.* (quoting *Ayers v. Township of Jackson,* 106 N.J. 557, 525 A.2d 287, 314 (1987) (footnote omitted)).

The Supreme Court held that "a medical monitoring trust fund is a more appropriate remedy than lump sum damages in mass exposure toxic tort cases." *Id.* Thus, under Pennsylvania law, it is clear that a court-supervised medical monitoring fund is an equitable remedy.

This conclusion is reinforced by examining the distinct differences between a medical monitoring trust fund and an award of lump sum damages. With a trust fund, the liability of the defendants can be limited to the actual cost of the examinations; in contrast, a lump-sum award is merely a rough estimate of the future costs, which can be grossly incorrect. *Id.* Under a medical monitoring fund, the Court can supervise the program to ensure that the plaintiff recipients solely receive medical examinations and tests, as opposed to allowing the plaintiff recipients to use the money for other purposes. *Id.* In addition, the use of a fund will permit the Court to require the defendants to address issues as they develop during the program administration, making such adjustments to the program as may be required by the circumstances. *Day v. NLO, Inc.,* 144 F.R.D. 330, 336 (S.D.Ohio 1992). From this comparison, it is obvious that the use of a medical monitoring fund to administer medical surveillance payments is an exercise of the Court's equitable powers.

Relying on this conclusion, plaintiffs argue that defendants simply have no right to a jury trial because the relief requested—a medical monitoring program—is solely equitable. *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 2308 (2d ed.1995). If plaintiffs are correct, under *Terry,* defendants would not be entitled to a jury trial, that is because the Supreme Court has given much greater weight to the second line of inquiry under *Terry,* and thus in the usual case, a finding that the relief requested is equitable is dispositive of the Seventh Amendment question. *See Terry,* 494 U.S. at 574–75, 110 S.Ct. at 1349–50 (arguing that the Supreme Court should eliminate the first line of inquiry under *Terry* because it has become obsolete in light of the dispositive effect that the Court has given to the second line of inquiry) (Brennan, J., concurring in

judgment). Although it would appear that the defendants are not entitled to a jury trial because plaintiffs have requested a medical monitoring fund that is equitable in nature, the Court finds, upon closer review of the legal and equitable rights implicated here, that the *Terry* factors weigh in favor of jury trial.

Although a litigant generally does not have a right to a jury trial when the relief sought is equitable, a plaintiff also cannot invoke the powers of equity where there is an adequate remedy at law. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 2035, 119 L.Ed.2d 157 (1992) (citation omitted). This threshold provision—demonstrating a lack of an adequate remedy at law—specifically "serve[s] 'to guard the *right of trial by jury* preserved by the Seventh Amendment and to that end should be liberally construed.'" *Ross*, 396 U.S. at 539, 90 S.Ct. at 738 (citation omitted) (emphasis added). Thus, in the usual case, the plaintiffs herein would be required to make a showing of no adequate remedy at law before they could properly invoke the equitable powers of this Court. The plaintiffs, if they were required to make this showing in this case, would not be able to demonstrate that no adequate remedy at law existed. This finding necessarily follows because as noted above, the plaintiffs could request lump sum damages as relief under the medical monitoring *claim* as opposed to the relief of a medical monitoring *fund*.[6] *See Day*, 144 F.R.D. at 335–36. Because the plaintiffs could have sought an award of lump sum damages, the plaintiffs, under the usual analysis, would have been barred from seeking injunctive relief. The only reason plaintiffs are permitted to pursue injunctive relief, in the form of medical monitoring fund, is because under Pennsylvania law, such a remedy has been found to invoke the equitable powers of the Court. *Simmons*, 543 Pa. 664, 674 A.2d 232; *Redland*, 548 Pa. 178, 696 A.2d 137.

In the context of medical monitoring, a plaintiff is not required to show an inadequate remedy at law before he or she seeks to pursue injunctive relief in the form of a medical monitoring fund. While the Court fully agrees that the public interest is furthered by permitting litigants the opportunity to recover for the costs of future medical care through a medical monitoring fund, the result of such a decision is that a defendant's constitutional right to a jury trial will rise or fall on the form of a plaintiff's pleading. As plaintiffs themselves state, "if [we] here were seeking a lump sum disbursement instead of a medical monitoring fund, the claim would be damages in the form of future payments, and a jury trial would be applicable." (Pls.' Opp. Defs.' Mot. Enforce Jury Demand at 7 n. 2). Thus, plaintiffs themselves candidly admit that the choice as to whether this action is entirely legal, or partially legal and equitable, is in their control.

This result, however, directly conflicts with the purpose behind the principle of law that requires plaintiffs to demonstrate that they have no adequate remedy at law before they can call upon the equitable powers of a court. The purpose behind this provision is "'to guard the *right of trial by jury* preserved by the Seventh Amendment and to that end should be liberally construed.'" *Ross*, 396 U.S. at 539, 90 S.Ct. at 738 (citation omitted) (emphasis added). In application, it prevents a plaintiff from depriving a defendant of his constitutional right to jury by trial. Here, plaintiffs do not have to demonstrate that there exists no adequate remedy at law to pursue a medical monitoring fund; while the Court agrees that plaintiffs should, and do, have this right to pursue a medical monitor-

---

**6.** At this point, the Court takes the opportunity to note that there is a theoretical and practical distinction between a medical monitoring fund and a medical monitoring claim. The medical monitoring claim is the plaintiffs' actual cause of action; in order to have the right to a remedy, the plaintiffs must first establish that they have satisfied the seven elements of a medical monitoring fund. In contrast, the medical monitoring fund is the actual relief that will be awarded if the plaintiffs succeed in establishing the claim. The difference between the medical monitoring claim and the medical monitoring fund is highlighted by the fact that plaintiffs, as they recognize in their brief, can prevail on their medical monitoring claim and request monetary damages in lieu of their fund. Indeed, the plaintiffs' first motion for class certification under Rule 23(b)(2) was initially denied because the relief requested under its medical monitoring claim was predominantly monetary damages, not a court-supervised fund.

ing fund, the Court does not agree that plaintiffs' unilateral decision to pursue a medical monitoring fund, as opposed to lump sum damages, should deprive defendants of their constitutional right to trial by jury. Indeed, the Supreme Court has explicitly stated that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

Thus, the Court finds that although the relief requested by plaintiffs is considered equitable under medical monitoring law, such a determination should not be afforded much weight because the equitable character of the relief sought by plaintiffs is determined solely by plaintiffs' pleading. Pursuant to the second line of inquiry under *Terry,* the Court is asked to consider whether the relief requested is equitable in nature; although the medical monitoring fund sought here is equitable in nature, it could have just as readily been a request for legal relief. Indeed, the plaintiffs would have never been able to seek equitable relief in the absence of the judicial determination that a request for a monitoring fund calls upon the equitable powers of the Court, that is so because plaintiffs have an adequate remedy at law—the award of lump sum damages. Thus, the Court finds that the nature of the relief sought under plaintiffs' medical monitoring fund, for the purposes of the Seventh Amendment analysis, is inherently both legal and equitable.

On balance, this Court's analysis of the nature of plaintiffs' medical monitoring action and the remedy they seek—cast in the light of the uniqueness of the modern common law medical monitoring claim—convinces this Court that this action is a legal one for the purposes of the Seventh Amendment.

While it may appear superficially that there exists a conflict between this Court's Rule 23(b)(2) certification and today's decision, upon closer review, the conflict is clearly exposed as being illusory. Under Rule

23(b)(2), certification is appropriate where equitable and injunctive relief is the sole or primary relief sought and "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Rules Advisory Committee Notes to 1966 Amendments to Rule 23,* 39 F.R.D. 69, 102 (1966). Thus, in order to establish a right to Rule 23(b)(2) certification, it need only be shown that the relief requested is not predominantly damages. This inquiry has nothing to do with whether one's constitutional right to a jury trial has been implicated by the underlying nature of the claim. Indeed, the bar for determining whether the nature of a claim is equitable or legal for Seventh Amendment purposes is much higher than it is under Rule 23(b)(2) analysis. Under Seventh Amendment analysis, the right to a jury trial must be upheld even if the legal issues are characterized as "incidental" to equitable issues. *See Dairy Queen,* 369 U.S. at 470–71, 82 S.Ct. at 896. For this reason, decisions holding that medical monitoring claims may be certified under Rule 23(b)(2) are not dispositive for purposes of the right to a jury trial. In theory and practice, courts can certify a class pursuant to Rule 23(b)(2) and yet find that the parties are entitled to a jury under the Seventh Amendment.

■ Indeed, other courts, although not directly examining the issue, have repeatedly sent medical monitoring claims to a jury. *See, e.g., In Paoli Railroad Yard PCB Litig.,* 35 F.3d 717 (3d Cir.1994) (describes jury as deciding whether plaintiffs need medical monitoring); *Paoli I,* 916 F.2d 829 (same); *Herber v. Johns–Manville Corp.,* 785 F.2d 79 (3d Cir.1986) (jury decides whether medical monitoring needed).[7] Most persuasively, Judge Spiegel, in *Day v. NLO,* sent the medical monitoring claim to the jury. 851 F.Supp. 869 (S.D.Ohio 1994). *Day* was also a class action that had been certified under Rule 23(b)(2). In spite of this fact, the *Day* court determined that the issues of liability for medical monitoring and the question of

---

**7.** In this case, although this Court will send the issue of liability under plaintiffs' medical monitoring claim to a jury, the Court specifically reserves the power to structure the remedy of the actual medical monitoring fund. *See Fried,* 925

F.Supp. at 375 (Judge Joyner noted that he was reserving the right to structure the medical monitoring remedy although he was sending the claim to the jury).

whether medical monitoring was necessary would both go to the jury. *Id.* at 884. Thus, despite plaintiffs' argument to the contrary, a court can properly send a Rule 23(b)(2) class action to the jury for determination, as long as the parties are entitled to a jury trial under the Seventh Amendment.

### III. Conclusion

Accordingly, for the foregoing reasons, this Court will grant defendants' motion to enforce jury demand.

An appropriate Order follows.

### ORDER

AND NOW, this 10th day of October, 1997, upon consideration of Defendants' Motion to Enforce Jury Demand, and plaintiffs' response thereto, and defendants' reply thereto, it is hereby ORDERED that said Motion is GRANTED.

AND IT IS SO ORDERED.