674 A.2d 232

James R. and Eleanor SIMMONS, H/W, Appellants,

v.

PACOR, INC., Eagle–Picher Industries, Inc., Keene Corporation, Southern Textile Company, J.P. Stevens Company, Garlock, Inc., Celotex, Inc., Owens–Illinois Inc., Fibreboard Corporation, GAF Corporation, Forty–Eight Insulation, Inc., and Raymark Industries, Inc., Appellees.

Theodore and Mary MURRAY, H/W, Appellants,

v.

PHILADELPHIA ASBESTOS CORPORATION, GAF Corporation, Raymark Industries, Southern Textile Company, Garlock, Inc., Fibreboard Corporation, Eagle–Picher Industries, Inc., Keene Corporation, Celotex Corporation, J.P. Stevens Co., Inc., and Owens–Illinois, Inc., Appellees.

William and Paula GIFFEAR, H/W, Appellants,

v.

JOHNS–MANVILLE CORPORATION, Pacor, Inc., Eagle–Picher Industries, Inc., Unarco Industries, Inc., Keene Corporation, Raybestos Manhattan, Inc., Celotex Corporation, Southern Textile Company, J.P. Stevens Company, Garlock Inc., Owens–Illinois Inc., Fibreboard Corporation, and GAF Corporation, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 23, 1995.

Decided April 4, 1996.

Steven J. Cooperstein, Philadelphia, for James & Eleanor Simmons, Theodore & Mary Murray, William & Paul Giffear.

Howell K. Rosenberg, Philadelphia, Theodore Goldberg, Pittsburgh, Albert J. Slap, Philadelphia, for amicus curiae Pa. Trial Lawyers.

Nathan Schachtman, Kimberly Waldron, Philadelphia, for Owens–Illinois.

Robert H. Riley, pro hoc vice for Owens–Illinois.

Andrew J. Trevelise, Michael T. Scott, Richard T. Wentley and Robin Sheldon, Philadelphia, for Fibreboard Corp.

Thomas M. Goutman, Philadelphia, for amicus curiae Pa. Defense Institute.

Robert B. Lawler, Philadelphia, for amicus curiae Georgia Pacific.

Kathy K. Condo, Pittsburgh, for amicus curiae Pittsburgh Corning.

Richard A. Ejak, David G. Klaber, Pittsburgh, for amicus curiae Lincoln Electric Company.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

This consolidated appeal raises issues involving whether asymptomatic pleural thickening caused by occupational exposure to asbestos may give rise to a cause of action. The facts underlying each case are set forth below.

### Simmons

James Simmons was exposed to asbestos while serving in the United States Navy between 1943 and 1963. He was also exposed during 1963 through 1974, while he was employed as an electronics technician in the Philadelphia Naval Shipyard. In 1982, when Simmons was fifty-six years old, an abnormality on a chest x-ray revealed pleural thickening. Simmons saw a specialist, who informed him that his asbestos exposure increased his risk of contracting cancer. This information caused Simmons to feel very upset and afraid. His fear of contracting cancer affected his work and had an adverse impact on family relationships.

At trial, Dr. Stanley Altschuler, a board-certified internist and pulmonary specialist, testified that Simmons suffers from pleural thickening as a result of his asbestos exposure. He found that the disease had progressed since the time it was initially visible on x-ray. Dr. Altschuler also testified that Simmons is five times more likely to contract cancer, and three hundred times more likely to get mesothelioma, than he would be had he never been occupationally exposed to asbes-

tos.[1] Dr. Altschuler opined that Simmons should receive an examination and x-ray each year to help ensure early detection of cancer. He also stated that Simmons's pleural thickening did not affect his lung function or cause any impairment. Dr. Allan Freedman, testifying for the defense, agreed that Simmons had asbestos-caused pleural thickening, but opined that the scarring had not increased since first observed on x-ray.

## Murray

Theodore Murray labored as a carpenter, joiner, pipecoverer and insulator for the New York Shipbuilding Company in Camden, New Jersey, between 1952 and 1967. He had considerable asbestos exposure in all areas of his employment.

In 1982, when he was fifty-seven years old, Murray learned that he had asbestos-related disease and that his asbestos exposure increased his risk of contracting cancer. This knowledge has left him fearful of getting cancer. He exhibits signs of nervousness and often has nightmares. He becomes particularly fearful when going to a hospital and when hearing about others who have cancer.

Dr. Altschuler testified at trial that Murray suffers from pleural thickening and that the disease has progressed since the initial x-ray was taken. He also stated that Murray is subject to the same increased risks of contracting cancer and mesothelioma as Simmons. Likewise, his condition should be monitored yearly.

Dr. Theodore Rodman, a defense medical expert, testified that Murray suffers from pleural thickening but disagreed with the proposition that the pleural thickening has increased over the years. Dr. Rodman also testified that there was no impairment in lung function which could be attributed to the

1. Defendants asserted that the five-fold increase risk of cancer superimposed on a baseline risk of lung cancer in the general population of about 10 out of 100,000, resulted in a statistical risk of 58 out of 100,000 per year, which is an annual risk of only $\frac{1}{20}$ of 1%. As to mesothelioma, defendants asserted that the increased risk of mesothelioma set forth by plaintiffs' expert amounted to an increased risk of only $\frac{1}{32}$ of 1%.

pleural changes and that the changes were of no clinical significance.

## Giffear

William Giffear served in the United States Navy from 1964 through 1968, during which time he was exposed to asbestos while working as a boilerman. He inhaled dust created by asbestos-containing products such as pipe covering, pipe cloth and cement on a daily basis. Upon discharge from the Navy, Giffear worked as a plumber and was again exposed to asbestos-containing products. In 1980, he began work as a pipefitter in the Philadelphia Naval Shipyard. He was still employed by the shipyard at the time of trial.

Following an annual medical checkup, Giffear was informed that he had pleural disease. He was also told that the disease was irreversible and could lead to cancer. Giffear was thirty-four years old at the time of the diagnosis and became extremely upset and concerned about caring for his young children.

At trial, Giffear's medical expert, Dr. William Fineman, testified that Giffear's x-rays revealed pleural thickening with plaque formation, but that Giffear did not sustain any lung impairment as a result of his alleged exposure to asbestos-containing products. Fineman also opined that Giffear did not exhibit any signs of mesothelioma or lung cancer. He did, however, set out the cancer risks which Giffear's asbestos exposure subjected him to. The risks were identical to those faced by Murray and Simmons. Giffear testified that he suffers anxiety due to his increased risk of lung cancer and mesothelioma. He further stated that his fear made him irritable, affected his sleep and affected his relationship with his wife.

The defense medical expert, Dr. Alan Pope, agreed that Giffear had pleural thickening with no physical impairment. Dr. Pope found that although there may have been some minimal progression of plaque formation between the first x-

ray films taken of Giffear in 1980 and 1983, there had been no progression in his pleural plaques since that time.

## Procedural History

Each Appellant filed suit in the Philadelphia County Common Pleas Court to recover damages for injuries caused by occupational exposure to asbestos. Specifically, Appellants sought recovery for (1) risk and fear of cancer, (2) mental anguish, and (3) loss of life's pleasures. At the time of trial, the remaining defendants were Owens Illinois, Inc., Fibreboard Corporation, and Keene Corporation.[2] The reverse bifurcated trial in the Giffear action commenced on March 13, 1991. It was jointly tried with another case which was not the subject of any appeal. The Simmons and Murray cases were consolidated prior to trial and a reverse bifurcated trial commenced on June 9, 1991.

Following the Giffear trial, the jury returned a verdict of $300,000.00 for Giffear. The liability portion of the trial was then conducted by stipulation between the parties before the court sitting without a jury. Keene Corporation and Fibreboard Corporation were each held liable for ⅛ of the verdict. The defendants moved for post-trial relief, arguing, *inter alia*, that the court erred in failing to direct a verdict that asymptomatic non-impairing pleural thickening is a non-compensable injury. Giffear petitioned the court for delay damages.

On February 4, 1992, the trial court granted the defendants' motion for judgment notwithstanding the verdict (j.n.o.v.) and denied Giffear's petition for delay damages. The trial court found that there was no medical testimony linking any symptoms, illness or impairment of any sort to the pleural thickening suffered by Giffear. It concluded that asymptomatic pleural thickening is not a cognizable cause of action.

2. Owens–Illinois, Inc. settled with Giffear (not with Simmons and Murray) after the verdict. Keene Corporation subsequently filed a bankruptcy petition under 11 U.S.C. § 301 before the Superior Court resolved its appeal. Accordingly, the Superior Court stayed Keene's appeal pending the conclusion of the bankruptcy proceedings.

Following the damages phase of the Murray/Simmons trial, the jury awarded each plaintiff $350,000.00. Pursuant to the parties' stipulation to the court as to apportionment of liability, Owens–Illinois, Inc., was found to be liable for ⅙ of the Simmons verdict and ½ of the Murray verdict. Fibreboard was found to be liable for ⅙ of the verdict.

On July 23, 1992, the trial court denied defendants' request for j.n.o.v. and, alternatively, a remittitur. It found that pleural thickening is a legal injury, objectively determined by a chest x-ray. It noted that both plaintiffs alleged and proved permanent, untreatable pleural thickening and increased risks of mesothelioma and lung cancer. The court also granted plaintiffs' request for delay damages.

All of the judgments were timely appealed to the Superior Court. In *Giffear*, the entry of j.n.o.v. was reversed by a panel of the Superior Court. Upon defendants' petition, the Superior Court granted reargument *en banc*. On September 16, 1993, the Superior Court affirmed the grant of j.n.o.v., holding that a diagnosis of pleural thickening unaccompanied by discernible physical symptoms or functional impairment does not give rise to an action for damages.[3]

On April 11, 1994, a panel of the Superior Court reversed the judgments in favor of Simmons and Murray. Relying on the holding in *Giffear*, the majority concluded that the plaintiffs' non-impairing, asymptomatic pleural thickening was not

---

**3.** Judge Wieand filed a concurring opinion in which he agreed that Giffear failed to establish any damages resulting from his asymptomatic pleural thickening. He noted, however, that he would leave for another day the issue of whether, under different circumstances, recovery should be allowed for other damages flowing from asymptomatic pleural thickening.

Judge Del Sole also filed a concurring opinion in which Judge Ford Elliot joined. Judge Del Sole agreed that a person cannot recover damages for "fear of cancer" and "risk of future cancer" in asbestos cases where cancer is not present. However, he found that asymptomatic pleural thickening was sufficient to give rise to a cause of action if damages are established. Judge Del Sole stated as examples of such damages, the costs of medically monitoring the disease, lost employment opportunities and decreased earning capacity.

compensable as a matter of law.[4]

## Discussion

The general issue we must resolve is whether j.n.o.v. should have been granted for the defendants, Appellees. In reviewing a j.n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Moure v. Raeuchle*, 529 Pa. 394, 402, 604 A.2d. 1003, 1007 (1992) (citations omitted). There are two bases upon which a j.n.o.v. can be entered: one, the movant is entitled to a judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Id.* In the instant case, the Superior Court concluded that Appellees were entitled to judgment as a matter of law. In examining this determination, our scope of review is plenary, as it is with any review of questions of law. *Phillips v. A–Best Products,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

In determining whether Appellees are entitled to judgment as a matter of law, we must specifically decide whether asymptomatic pleural thickening, i.e., unaccompanied by disabling consequences or physical impairment, is a compensable injury. Asbestos-related pleural thickening has been defined as the formation of calcified tissue on the pleura, the membranes surrounding the lungs. *Doe v. Johns–Manville Corp.,* 324 Pa.Super. 469, 472, 471 A.2d 1252, 1253 (1984) (en banc). The condition may be objectively determined in the sense that it is revealed on an x-ray. *Id.* Pleural thickening may occur independent of or in conjunction with asbestosis. *Marinari v. Asbestos Corporation, Ltd.,* 417 Pa.Super. 440, 447, 612 A.2d 1021, 1025 (1992), quoting Mansfield, *Asbestos: The Cases and*

---

**4.** Judge Johnson filed a dissenting opinion, finding that the issue of whether asymptomatic pleural thickening is compensable was not preserved by Fibreboard Corporation. He also noted that the decision in *Giffear* should not be applied to Murray and Simmons retroactively.

*the Insurance Problem,* 15 Forum 860, 861–64 (1980). When the pleural thickening is asymptomatic, individuals are able to lead active, normal lives, with no pain or suffering, no loss of an organ function, and no disfigurement due to scarring. *See Marinari,* 417 Pa.Super. at 448, 612 A.2d at 1025; *In Re Hawaii Federal Asbestos Cases,* 734 F.Supp. 1563, 1567 (D.Haw.1990).

Herein, Appellants sought recovery under the Restatement (Second) of Torts § 402A (1965) for damages for physical harm to a user or consumer. They contend that the scarring of their lung tissue caused by occupational asbestos exposure, as evidenced by their chest x-rays, is sufficient to establish an ascertainable and physically objective injury. Appellants argue that even though they have not proven the existence of physical symptoms, they have medically significant diseases that will never improve, and may worsen, and which warrant the awarding of damages.

Appellees contend that a compensable tort injury requires physical impairment or a diminution of a bodily function. As there was no medical testimony establishing that Appellants suffered any disabling consequences or physiological dysfunction as a result of their condition, Appellees submit that recovery should not be permitted.

Appellees further rely on the distinctions between "injury," "harm," and "physical harm" as set forth in § 7 of the *Restatement (Second) of Torts* (1965). The word "injury" indicates the invasion of a legally protected interest which, when accompanied by harm, entitles a person thereby harmed to maintain an action in tort. *Id.* at § 7, comment a. The Restatement further provides that

"[h]arm" implies a loss or detriment to a person, and not a mere change or alteration in some physical person, object or thing. Physical changes or alterations may be either beneficial, detrimental, or of no consequence to a person. In so far as physical changes have a detrimental effect on a person, that person suffers harm.

*Id.* at § 7, comment b. Appellees argue that because the scarring of the lung tissue was a mere physical change that was unaccompanied by any detrimental effect, no "harm" was established.

After examining the issue at great length, we agree that asymptomatic pleural thickening is not a compensable injury which gives rise to a cause of action.[5] We reach this conclusion not only because we find that no physical injury has been established that necessitates the awarding of damages, but also because, pursuant to *Marinari v. Asbestos Corporation, Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992), Appellants are not precluded from subsequently commencing an action for an asbestos related injury when symptoms develop and physiological impairment begins.

In *Marinari,* the issue was whether the two year statute of limitations, 42 Pa.C.S. § 5524(2), bars an action for lung cancer where the action was filed within two years of the cancer diagnosis but four years after asymptomatic pleural thickening had been discovered on x-ray. The court held that a plaintiff's discovery of a nonmalignant, asbestos related lung pathology, whether or not accompanied by clinical symptoms of impaired pulmonary function, does not trigger the statute of limitations with respect to an action for a later, separately diagnosed disease of lung cancer. *Id.* at 442, 612 A.2d at 1022. The Superior Court followed the majority of jurisdictions which had adopted this "two disease rule" or "separate disease rule" in asbestos exposure cases.

Prior to *Marinari,* a single cause of action for all present and future harm as a result of an asbestos related disease accrued at the time when the first signs of the disease were discovered. Thus, to prevent the asbestos claim from being precluded by the statute of limitations, the plaintiff faced the arduous task of having to establish all future harm that may

5. This conclusion is consistent with our finding in *Volterano v. Workmen's Compensation Appeal Board,* 536 Pa. 335, 639 A.2d 453 (1994), that pleural thickening is not a physical injury for purposes of establishing entitlement to worker's compensation benefits because the functioning of the claimant's lungs was not impaired.

result from the contraction of the asbestos related disease. Although such a rule was workable in a routine personal injury case, it did not bring about just results in cases involving latent diseases which do not surface until years after the initial exposure.

*Marinari* remedied this situation by permitting a plaintiff to commence separate causes of action for separate asbestos related diseases, i.e., one for a nonmalignant asbestos related disease which had become manifest and another cause of action for the subsequent development of a separate malignant disease such as lung cancer or mesothelioma.

The court in *Marinari* was not specifically presented with the issue of whether pleural thickening, absent physical impairment, is sufficient to sustain a cause of action.[6] We conclude, however, that the natural extension of *Marinari* is to preclude an action for asymptomatic pleural thickening since Appellants are permitted to commence an action when the symptoms and physical impairment actually develop. The diagnosis of asymptomatic pleural thickening has no statute of limitations ramifications regarding a claim alleging a nonmalignant physiological impairment. A plaintiff is also permitted to file a subsequent suit if and when cancer develops.

We note that several other jurisdictions also deny recovery for asbestos related disease unaccompanied by physical impairment. *See Owens–Illinois v. Armstrong*, 87 Md.App. 699, 591 A.2d 544, 561 (1991) (compensatory damages will not be awarded for pleural scarring as it does not cause a functional impairment or harm); *In re Hawaii Federal Asbestos Cases*, 734 F.Supp. 1563, 1567 (the mere presence of asbestos fibers, pleural thickening pleural plaques in the lung, unaccompanied by an objectively verifiable functional impairment is not enough to establish compensable harm; the development of asbestos related cancer in a plaintiff at some later date would give rise to a cause of action separate and distinct from any

---

**6.** We note that since the *Marinari* court was not faced with the issue of whether asymptomatic pleural thickening is a compensable injury, the court's finding that a cause of action arises from such condition is mere *obiter dictum* that we reject.

current injury); *Caterinicchio v. Pittsburgh Corning Corp.*, 127 N.J. 428, 605 A.2d 1092, 1096 (1992) (the trial court was incorrect in determining as a matter of law that plaintiff had suffered a compensable injury solely because there was evidence of pleural thickening); *Howell v. Celotex Corp.*, 904 F.2d 3, 5 (3d Cir.1990) (the presence of pleural thickening may not, alone, mandate a jury finding of compensable injury for an otherwise healthy plaintiff); *Burns v. Jaquays Mining Corporation*, 156 Ariz. 375, 752 P.2d 28 (1987) (changes in lung tissue absent physical impairment is not sufficient to support a cause of action).

■ Having determined that asymptomatic pleural thickening is not a sufficient physical injury to warrant damages, we must now decide whether Appellants may recover for emotional distress caused by an increased fear of cancer. Appellants concede that a jury may be precluded from awarding damages for an increased risk of cancer in light of *Marinari*, Consolidated Brief for Appellants at 33 n. 7. They contend, however, that the same is not true for a fear of cancer claim since it does not allege a future injury. Rather than being contingent upon developing cancer in the future, Appellants submit that it is a present claim for damages for emotional distress.

■ Notwithstanding the fact that Appellants' fear presently exists, we hold that because asymptomatic pleural thickening is not a sufficient physical injury, the resultant emotional distress damages are likewise not recoverable.[7] It is the general rule of this Commonwealth that there can be no recovery of damages for injuries resulting from fright or nervous shock or mental or emotional disturbances or distress unless they are accompanied by physical injury or physical

7. We are not eliminating emotional distress or mental anguish as damages in a nonmalignant asbestos disease case. We merely hold that absent physical injury, these damages are not recoverable. Denying damages for increased risk and fear of cancer is consistent with the Superior Court's decisions in *Marinari*, 417 Pa.Super. at 450–451, 612 A.2d at 1026; *Morrison v. Fibreboard Corp.*, 428 Pa.Super. 114, 630 A.2d 436 (1993); *Higginbotham v. Fibreboard Corp.*, 428 Pa.Super. 26, 630 A.2d 14 (1993); and *Ottavio v. Fibreboard Corp.*, 421 Pa.Super. 284, 617 A.2d 1296 (1992).

impact. *Knaub v. Gotwalt,* 422 Pa. 267, 220 A.2d 646 (1966). We decline to adopt Appellants' view that the pleural thickening establishes a sufficient "impact" to warrant recovery for mental anguish. Those cases which base recovery upon an "impact" rather than an injury involve plaintiffs who have witnessed a traumatic physical injury to a close family member. *See Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).[8] The instant circumstances are not analogous since we have held that no physical injury to any party has been established.

Furthermore, as the Superior Court noted in *Giffear,* damages for fear of cancer are speculative. The awarding of such damages would lead to inequitable results since those who never contract cancer would obtain damages even though the disease never came into fruition. The actual compensation due to the plaintiff can be more accurately assessed when the disease has manifested.

Several other jurisdictions follow the view that absent manifest injury, emotional distress damages are not recoverable. *See Burns v. Jaquays,* 156 Ariz. at 378, 752 P.2d at 31 (there can be no claim for damages for the fear of contracting asbestos-related disease in the future without the manifestation of a bodily injury); *In re Hawaii Federal Asbestos Cases,* 734 F.Supp. at 1569 (as a matter of law, fear based on self-serving declarations is not reasonable absent an underlying compensable harm). *Bubash v. Philadelphia Electric Company,* 717 F.Supp. 297 (M.D.Pa.1989) (emotional distress result-

**8.** In *Niederman v. Brodsky,* a father sought recovery for his physical injuries as well as for mental shock and pain when he witnessed an automobile fatally strike his son. We there abandoned the requirement of a physical impact as a precondition to recovery for damages in those cases where the plaintiff was in personal danger of physical impact and where the plaintiff actually did fear the physical impact.

An exception was carved into the "zone of danger" rule in *Sinn v. Burd,* where a plaintiff was permitted to recover damages for physical and mental injuries incurred when she saw her minor daughter struck and killed by an automobile. The court rejected the notion that the position of the plaintiff at the time of the event controlled whether recovery could be had. Instead, the court focused on whether the emotional injuries sustained by the plaintiff who witnessed the traumatic event were reasonably foreseeable to the defendant.

ing from fear of contracting cancer is not recoverable absent physical injury); *Friedman v. General Electric Company*, 706 F.Supp. 376 (E.D.Pa.1989) (physical injury required to support fear of cancer claim).[9]

In any case, Appellants are not left without a remedy for their mental anguish. As discussed extensively above, *Marinari* permits an action to be commenced if cancer develops. It is in this action that Appellants can assert their emotional distress or mental anguish claims. To allow the asbestos plaintiff in a non-cancer claim to recover for any part of the damages relating to cancer, including the fear of contracting cancer, erodes the integrity of and purpose behind the two disease rule. Both Appellees concede that if Appellants contract cancer, their mental anguish claims relating to their fear of cancer would be compensable at that time.[10]

In summary, we hold that asymptomatic pleural thickening caused by occupational exposure to asbestos does not . give rise to a cause of action for the damages requested by

9. We recognize that there are also jurisdictions which allow recovery for fear of cancer when there is a physical manifestation as a result of asbestos exposure. *See Devlin v. Johns–Manville Corporation*, 202 N.J.Super. 556, 495 A.2d 495 (1985); *Lavelle v. Owens–Corning Fiberglas Corporation et al.*, 507 N.E.2d 476 (Ohio Com.Pl.1987); *Beeman v. Manville Corporation*, 496 N.W.2d 247 (Iowa 1993). These decisions, however, do not analyze the issue in light of the separate disease rule.

10. Appellee Fibreboard asserts that "[i]t follows, then, [from the two disease rule] that all damages—past, present and future—associated with the development of a malignant disease are also separate and distinct from the past, present and future damages associated with the development of a nonmalignant asbestos-related condition." Fibreboard Brief at 29. "The *Giffear* Court simply clarified that the two disease rule means that all damages associated with the development of cancer are recoverable in the cause of action for cancer." *Id.*

Appellee Owens–Illinois, Inc. admits that "[a] necessary corollary to the "two disease" rule is that a person may seek damages for fear of cancer only if and when cancer occurs...." Owens–Corning Brief at 11. Owens–Corning further states that "[r]equiring the actual occurrence of impairing asbestos-related disease in order to bring suit, and then awarding damages for all past, present and future pain and suffering related to that disease, insures that adequate compensatory damages are channelled to those who are most entitled to them." *Id.* at 24–25.

Thus, both Appellees admit that damages are recoverable for the fear of cancer at the time the cancer manifests itself.

Appellants. We do recognize, however, a limited exception regarding damages for expenses incurred in the medical surveillance of the condition. We acknowledge that the United States Court of Appeals for the Third Circuit has predicted that, in certain cases, we would allow recovery for medical monitoring. *See In re Paoli Railroad Yard PCB Litigation,* 916 F.2d 829 (3d Cir.1990) (*Paoli I* ) (claim for medical monitoring recognized where plaintiffs were exposed to polychlorinated biphenyls (PCB's) found in railcar transformers); *In re Paoli Railroad Yard PCB Litigation,* 35 F.3d 717 (3d Cir. 1994) (*Paoli II* ) (medical monitoring claim viable under Pennsylvania law).

We find both interesting and appropriate the rationale and findings as articulated by the Court of Appeals of Arizona in *Burns v. Jaquays Mining Corporation,* 156 Ariz. 375, 752 P.2d 28 (1988). Notwithstanding its conclusion that asymptomatic pleural thickening is not a compensable tort, the Arizona court awarded damages for medical monitoring. It stated,

> [w]e believe, under the facts of this case and despite the absence of physical manifestation of any asbestos-related diseases, that the plaintiffs should be entitled to such regular medical testing and evaluation as is reasonably necessary and consistent with contemporary scientific principles applied by physicians experienced in the diagnosis and treatment of these types of injuries.

*Id.* at 380, 752 P.2d at 33.

We adopt this rationale as the rule of law for this Commonwealth regarding plaintiffs diagnosed with asymptomatic pleural thickening caused by occupational exposure to asbestos. In reaching this conclusion, we note that the circumstances surrounding asbestos related diseases cannot be viewed in a vacuum. We are cognizant of the fact that the specter of cancer weighs heavily on the minds of those diagnosed with pleural thickening. Although we hold that awarding damages for the increased risk and fear of cancer is contrary to the established jurisprudence of this Common-

680

wealth, we find that recovery for medical monitoring is appropriate and just.[11]

Unfortunately, although Appellants' experts recommended medical monitoring of the disease, Appellants have not sought relief upon those grounds and are therefore not entitled to such expenses.[12]

For the reasons set forth herein, the judgments of the Superior Court are hereby affirmed.[13]

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

11. In *Paoli I,* the court noted that

[t]he injury in an enhanced risk claim is the anticipated harm itself. The injury in a medical monitoring claim is the cost of the medical care that will, one hopes, detect that injury. The former is inherently speculative because courts are forced to anticipate the probability of future injury. The latter is much less speculative because the issue for the jury is the less conjectural question of whether the plaintiff needs medical surveillance.

*Id.,* 916 F.2d at 850–851.

12. Appellants expressly state that they "do not seek a holding by the court that they may recover medical monitoring costs." Appellants' Reply Brief at 7.

13. Additionally, the Application to Present Post–Submission Letter which was filed by counsel for amicus curiae, the Lincoln Electric Company and the BOC Group, Inc., is granted.