## Grant v. Bridgestone Firestone Inc.

*Kenneth Jacobsen,* for plaintiffs.
*Morton Daller,* for defendants.

HERRON, *J.,* June 12, 2001—This opinion addresses the arguments made in the preliminary objections of defendants Bridgestone Firestone Inc. and Ford Motor Co. to the consolidated amended complaint of the class action plaintiffs. Because the complaint does not set forth a link between the individual plaintiffs and the damages

alleged generally, the plaintiffs must replead their first three counts. In addition, the court does not have the authority to grant the plaintiffs' request for injunctive relief, and the plaintiffs cannot proceed on that count.

## BACKGROUND

This case arises from two allegedly defective products that, when used in combination with each other, are synergistically dangerous. The first product is a line of tires allegedly designed by Ford and Firestone and manufactured and sold by Firestone since 1991. According to the complaint, the tires have a tendency to suffer sudden and complete tread separation. To reduce the risk of tread separation, Firestone recommended that the tires be inflated to 30 psi pressure. The plaintiffs aver that both defendants have been aware of the tires' defects since 1991.[1] Despite knowledge of these defects, the complaint alleges that the defendants advertised the tires as durable and safe.

The second product is the Explorer sport-utility vehicle, which is designed, manufactured and sold by Ford and comes equipped with the tires.[2] The plaintiffs allege

---

1. According to the plaintiffs, Ford was aware of specific tire failures on Ford vehicles and had replaced tires on vehicles sold in Saudi Arabia, Venezuela, Ecuador, Colombia, Thailand and Malaysia by August 1999. These replacements were allegedly undertaken in collusion with Firestone and with the goal of keeping the defects hidden from the United States government and public.

2. The complaint also makes allegations regarding the Mercury Mountaineer, which it asserts is essentially identical to the Ford Explorer. Both are referred to collectively as the "Explorer."

that, before putting the Explorer into production in 1990, Ford knew that the vehicle was unstable and had a tendency to roll over when going around turns. Based on this knowledge, Ford recommended that Explorer owners maintain the tires at 26 psi pressure to increase the Explorer's stability. At the same time, the complaint alleges, Ford knew that keeping the tires at 26 psi pressure would lead to a greater risk of tread separation, as it is below the pressure recommended by Firestone.

The National Highway Traffic Safety Administration officially began an investigation into the tires on May 2, 2000. Complaints about the tires' tread separation, including reports of deaths and injuries, accumulated during the summer of 2001. On August 9, 2000, Firestone and Ford announced a limited recall of some of the tires.[3] Under the terms of the recall, consumers who exchanged recall tires at authorized Firestone centers were entitled to a "prorated" rebate, with the amount and manner of the rebate resting in the sole discretion of Firestone. If tires were replaced at any other location, Firestone provided a reimbursement of $100 per tire, including charges for mounting, balancing and taxes.

On August 30, 2000, NHTSA recommended that Firestone expand the recall to include certain "additional tires." When Firestone refused, NHTSA issued a consumer advisory disclosing Firestone's refusal and the reasons behind its recommendation. In the advisory, NHTSA observed that the tread separation rate among certain additional tires exceeded those of the recall tires.

---

3. Tires included in the recall are referred to as the "recall tires."

According to the complaint, each of the individual plaintiffs either purchased or leased an Explorer fitted with tires. There are no specific allegations, however, that any named plaintiff suffered damages from the tires. Relying on the general class allegations, the plaintiffs assert claims for violations of the Pennsylvania UTPCPL,[4] breach of express warranty, breach of implied warranty of merchantability and a declaratory judgment. In addition, the plaintiffs argue that the recall is inadequate and should be expanded to include both the additional tires and all other outstanding tires.

## DISCUSSION

The complaint does not allege that the individual plaintiffs suffered any damages as a result of the tires' alleged defects. In addition, the court lacks the authority to grant the injunctive relief of a tire recall requested by the plaintiffs. As a result, the objections are sustained.

### I. *The Plaintiffs Have Not Pled Facts To Support Their Allegations of Damages*

Both defendants assert that the complaint does not allege that the individual plaintiffs[5] have suffered any com-

---

4. 73 Pa.C.S. §§201-1-201-9.3.

5. When examining preliminary objections to a class action complaint, a court should concern itself with the allegations and claims of the individual defendants only. *Sherrer v. Lamb,* 319 Pa. Super. 290, 294, 466 A.2d 163, 165 (1983). See also, *Janicik v. Prudential Insurance Company of America,* 305 Pa. Super. 120, 129, 451 A.2d 451, 454 (1982) ("[a] court may not make the initial class action determination until after the close of pleadings to ensure that the class proponent is presenting a non-frivolous claim capable of surviving prelimi-

pensable injury, thus barring them from asserting any claim. The defendants are correct in this regard: the named plaintiffs assert that damages have been inflicted but they do not assert that damages have been inflicted on them.

As stated by the Pennsylvania Supreme Court, "[d]amage or legal injury is essential to a right to sue in an action at law." *Sixsmith v. Martsolf,* 413 Pa. 150, 154, 196 A.2d 662, 664 (1964). More significantly, damages caused by a defendant's conduct is an essential element of each of the plaintiffs' first three causes of action. See 27 Pa.C.S. §201-92 (person bringing a private UTPCPL claim must show an "ascertainable loss of money or property, real or personal"); *Price v. Chevrolet Motor Division of General Motors Corp.,* 765 A.2d 800, 809 (Pa. Super. 2000) (successful claim for breach of warranty requires damages); *Wisniewski v. Great A. & P. Tea Co.,* 226 Pa. Super. 574, 579-80, 323 A.2d 744, 746-47 (1974) (discussing damages for breach of implied warranty of merchantability claim).

In the complaint, the plaintiffs broadly assert that members of the proposed class have suffered the following damages: "diminution of the value of their Explorers; costs to inspect, repair and/or replace their tires; and cost

---

nary objections"). If the allegations of the named plaintiff are insufficient however, the suit cannot proceed. *Citizens for State Hospital v. Commonwealth of PA,* 123 Pa. Commw. 150, 155, 553 A.2d 496, 498 (1989) (citing *Nye v. Erie Insurance Exchange,* 504 Pa. 3, 470 A.2d 98 (1983)).

of alternative transportation." Complaint at ¶¶98, 103, 110.[6]

While this harm might be sufficient to sustain most of the plaintiffs' causes of action, the complaint does not assert that the named plaintiffs have, in fact, suffered these damages. During oral argument and in their response to the objections, counsel for the plaintiffs referred to specific out-of-pocket costs the plaintiffs actually incurred in purchasing replacement tires, as well as the precise estimated loss in their Explorers' value attributable to the tires' defects. Response to Ford's objections at 6, 10; transcript of oral arguments on preliminary objections, Apr. 12, 2001 at 35-36. These specific allegations, however, are not reflected in the complaint: there are no allegations that the plaintiffs have had their tires replaced at a cost above the reimbursement offered by the defendants, that they have tried to sell their Explorers with a diminution in value attributable to the tires[7]

---

6. The plaintiffs also contend that they suffered a psychological fear of driving. Under Pennsylvania law, however, "there can be no recovery of damages for injuries resulting from fright or nervous shock or mental or emotional disturbances or distress unless they are accompanied by physical injury or physical impact." *Simmons v. Pacor Inc.,* 543 Pa. 664, 676-77, 674 A.2d 232, 238 (1995) (citing *Knaub v. Gotwalt,* 422 Pa. 267, 220 A.2d 646 (1966)). Thus, in the absence of other damages, fear of driving alone cannot sustain the plaintiffs' causes of action.

7. Several courts in other jurisdictions have held that a plaintiff cannot cite diminution in a vehicle's value as damage unless the plaintiff has tried to sell the defective vehicle. See *e.g., Briehl v. General Motors Corp.,* 172 F.3d 623, 628-29 (8th Cir. 1999) (where the complaint did not allege that any plaintiff had sold his or her vehicle at a reduced value, they had not suffered any cognizable injury); *Carlson v. General Motors Corp.,* 883 F.2d 287, 298 (4th Cir. 1989) (plaintiff's

or that they incurred alternate transportation costs. In the absence of factual allegations to connect the asserted damages to the individual plaintiffs, the causes of action asserted in the complaint cannot be sustained. As such, the complaint must be amended to include allegations that the named plaintiffs suffered the damages in question.[8]

## II. *The Court Is Not Authorized To Order the Recall of the Tires*

The plaintiffs assert that their exposure to imminent tread separation requires the extension of the recall to the plaintiffs' tires.[9] This type of relief is not appropriate in this forum.

While no Pennsylvania appellate court has addressed the issue specifically, courts in other jurisdictions have expressed serious reservations as to whether a court has the authority to order a recall and have refrained from doing so. See *e.g., National Women's Health Network*

---

allegations of damages due to lost resale value were insufficient to sustain cause of action for breach of implied warranty of merchantability); *Weaver v. Chrysler Corp.,* 172 F.R.D. 96, 100 (S.D.N.Y. 1997) ("[w]here . . . a product performs satisfactorily and never exhibits the alleged defect, no cause of action lies"); *Yost v. General Motors Corp.,* 651 F. Supp. 656, 658 (D.N.J. 1986) (allegations of diminution in a vehicle's value are unsupported where the plaintiff "has not apparently attempted to sell his car in the used car market and simply asserts the bald conclusion that its value in that market has decreased").

8. The defendants appear to concede that the complaint could be revised to satisfy Pennsylvania's pleading requirements. See transcript at 25, 56.

9. It does not appear that this allegation of damages is intended to support any claim other than that for declaratory relief and an extension of the recall.

*Inc. v. A.H. Robbins Co.,* 545 F. Supp. 1177, 1180 (D. Mass. 1982) ("state law simply does not provide a basis for worldwide recalls"); *Gregory v. Cincinnati Inc.,* 538 N.W.2d 325, 334 n.30 (Mich. 1995) (product recalls "are properly the province of administrative agencies, as the federal statutes that expressly delegate recall authority to various agencies suggest"). This is especially true with regard to motor vehicle recalls. See *Walsh v. Ford Motor Co.,* 130 F.R.D. 260, 267 (D.D.C. 1990) (court refused to order recall to "avoid entanglement with a regulatory scheme designed and intended to empower principally the Department of Transportation, rather than the courts, to order and oversee motor vehicle recalls"); *Crawley v. Daimler Chrysler Corp.,* July 1990, no. 4900, slip op. at 38 (C.P. Phila. Mar. 5, 2001) (Bernstein, J.) ("NHTSA is the proper forum to address automobile recalls"). These cases make the court reluctant to order the recall of the additional tires.

The plaintiffs counter by analogizing to *Redland Soccer Club Inc. v. Department of the Army,* 548 Pa. 178, 189, 696 A.2d 137, 142 (1997). In *Redland Soccer Club,* the Pennsylvania Supreme Court confirmed its recognition of a cause of action for medical monitoring[10] and refined the elements necessary for such an action. The plaintiffs contend that this supports the proposition that "Pennsylvania law has specifically recognized that injunctive relief is an appropriate remedy when a defen-

---

10. The Pennsylvania Supreme Court first expressed its support for a medical monitoring cause of action in *Simmons v. Pacor Inc.,* 543 Pa. 664, 674 A.2d 232 (1996), in which the court recognized medical monitoring as a narrow exception to the requirement that a plaintiff show more than speculative damages.

dant releases products on the market that harm individual consumers." Plaintiffs' memorandum in response to Ford's objections at 34.

The plaintiffs overlook several distinct differences between this case and a medical monitoring cause of action. Even though the court in *Redland Soccer Club* allowed a medical monitoring cause of action to be brought in the absence of present physical harm, the court still required proof of "a significantly increased risk of contracting a serious latent disease." 548 Pa. at 195, 696 A.2d at 145. In addition, the *Redland Soccer Club* court made it clear that it did not intend to jettison Pennsylvania's requirement that a plaintiff has suffered injury but rather sought to allow the recovery of medical expenses under limited conditions. Indeed, the court itself characterized the nature of medical monitoring claim as "non-speculative." 548 Pa. at 194, 696 A.2d at 145.[11] As a result, the fact that Pennsylvania allows claims for medical monitoring does not allow the court to order a recall based on a fear of tread separation and accident.

The plaintiffs also rely on *Talalai v. Cooper Tire & Rubber Co.,* no. Mid-L-8839-00 MT (N.J. Super. Ct. Law Div. Apr. 16, 2001), in which the New Jersey Superior Court found that federal law, in the form of the Motor Vehicle Safety Act,[12] did not pre-empt the New Jersey Consumer Fraud Act.[13] In *Talalai,* however, the court

---

11. In comparison, the court described its holding in *Simmons* as based on the conclusion that "damages for increased risk and fear of cancer were too speculative to be recoverable where cancer was not present." 548 Pa. at 194, 696 A.2d at 145.

12. 49 U.S.C. §§30101-30169.

13. N.J.S. 56 ch. 8.

noted that the case was about consumer fraud, not the regulations and standards promulgated under the MVSA, and that the plaintiffs were not seeking a recall. Slip op. at 3, 11. More significantly, the *Talalai* court recognized that "[a]n order requiring a recall under state law is entirely inconsistent with the federal scheme and would invade an exclusively federal province." *Id.* at 9 (citing *Juvenile Products Mfgrs. Ass'n Inc. v. Edmisten*, 568 F. Supp. 714, 719 (E.D.N.C. 1983)). Thus, *Redland Soccer Club* and *Talalai* do not allow this court to order the recall of the additional tires, and the cause of action for injunctive relief must be dismissed.

## CONCLUSION

The complaint does not allege an injury actually incurred by the individual plaintiffs. As a result, the plaintiffs must file a second consolidated amended complaint before they may proceed on their claims. In addition, the court cannot grant the injunctive relief requested in the complaint, and that cause of action is dismissed.

## ORDER

And now, June 12, 2001, upon consideration of the preliminary objections of defendants Bridgestone Firestone Inc. and Ford Motor Co. to the consolidated amended complaint of the class action plaintiffs, and the plaintiffs' response thereto and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed that the objections are sustained. The plaintiffs are directed to file a second consolidated amended complaint within 20 days of this order.