

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-2004

# Sheridan v. Cabot Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1984

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Sheridan v. Cabot Corp" (2004). *2004 Decisions.* Paper 216.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/216

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-1984

_____

SHIRLEY G. SHERIDAN

_____Appellant,

v.

CABOT CORPORATION, Individually and as Successor in Interest to
CABOT BERYLCO, INC., KAWECKI BERYLCO INC., a/k/a KBI KAWECKI
BERYLCO INDUSTRIES, INC., THE BERYLLIUM CORPORATION,

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(Civ. A. No. 02-cv-01212)
District Judge: Honorable Harvey Bartle, III

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 28, 2004

_____

Before: ROTH, BARRY, and GARTH, Circuit Judges

(Opinion Filed: October 19, 2004)

_____

OPINION

_____

Garth, <u>Circuit</u> <u>Judge</u>:

Shirley G. Sheridan, the plaintiff, has brought this action against the defendant Cabot Corp. pursuant to our diversity jurisdiction. She suffers from multiple medical ailments, including chronic beryllium disease. The question before us is whether she has established a cause of action under Pennsylvania law for beryllium-related disease, where the only alleged symptoms include permanent scarring of the lungs, shortness of breath and reduced pulmonary functioning.

The District Court granted summary judgment in favor of Cabot, concluding that Sheridan presented no evidence tending to establish the requisite causal nexus between her shortness of breath–the only alleged symptom that qualifies as a functional impairment–and her chronic beryllium disease, thus failing to establish a compensable injury under Pennsylvania law. We will affirm.

**I.**

Because we write exclusively for the benefit of the parties who are well acquainted with the facts and procedural posture of the present action, we will recount only those matters relevant to the issues before us. On October 30, 2001, Sheridan was diagnosed with chronic beryllium disease. Beryllium is a lightweight, high strength, tensile metal with a variety of industrial uses. It is also a toxic substance with the capacity to cause both cancer and a chronic scarring lung disease–chronic beryllium disease. Cabot and its predecessors manufactured and processed beryllium-containing products at its facility in

2

Reading, Pennsylvania. Sheridan's exposure to beryllium occurred between 1951-1956, when she lived nearby the Reading Plant, which was emitting toxic beryllium fumes, dusts and particulate matter into the ambient air. She has had no other exposure to beryllium.

In October 2001, Dr. Milton Rossman of the University of Pennsylvania first evaluated Sheridan to determine whether she was afflicted with chronic beryllium disease. At that time, Sheridan reported no respiratory problems, and Dr. Rossman described her as "active as any other 74 year old." Dr. Rossman's evaluation included a CT scan, chest x-ray, blood tests, pulmonary function tests, bronchoscopic lavage and beryllium lymphocyte proliferation tests of blood and lung cells. The tests found that Sheridan's pulmonary function was "within normal limits." In an October 30, 2001 letter to Sheridan's primary care physician, Dr. Mark Zibelman, Dr. Rossman stated:

> Ms. Sheridan clearly has evidence of chronic beryllium disease. She had chronic granulomatis process of her mediastinum and lungs and a strong response to beryllium both in her blood and in her lung cells. Currently, there is no indication for treatment of this condition as she has essentially normal pulmonary function and there is no progressive evidence of lung disease on her high resolution CT. In addition, her bronchioalveolar lavage does not show a marked increase in her lymphocytes suggesting that this is probably stabilized and may not require treatment in the future.

Dr. Rossman recommended that Sheridan be followed closely and have pulmonary function studies and a chest x-ray "at least on a yearly basis."

On November 21, 2002, Sheridan returned to Dr. Rossman for her annual visit. In his letter of the same date to Dr. Zibelman, Dr. Rossman wrote that Sheridan had "noticed

3

some increasing shortness of breath over the last year" while taking walks and going up steps. Dr. Rossman noted that her pulmonary function studies "were essentially unchanged from what she had previously . . . . Except for a slight reduction in her vital capacity." Based on the tests that were conducted, Dr. Rossman was unable to determine whether Sheridan's shortness of breath or slight decrease in lung capacity were caused by her chronic beryllium disease. Her chest x-ray remained unchanged from her x-ray in October 2001. Dr. Rossman wrote:

> My suspicion is that her beryllium disease has not progressed in the last year; however, because of the active inflammation noted in her lungs, she is still at risk for developing progressive beryllium disease. I am concerned because of the shortness of breath that she relates that there may be something going on either due to her hives or due to her beryllium disease.

Notwithstanding these concerns, Dr. Rossman did not prescribe medication to combat Sheridan's disease. Dr. Rossman explained his reasons as follows:

> Because there were no abnormalities on a routine chest x-ray. Her pulmonary function studies were all within the normal range. And, finally, over time, I did not see any progressive decline in her [pulmonary] function.

Sheridan also suffers from several unrelated medical conditions. Over the last several years, she has been diagnosed with hypertension, nonobstructive coronary artery disease, acid reflux disease, a gastric ulcer, allergies, anxiety and osteoporosis. In addition, since 1971, Sheridan has suffered from chronic urticaria, commonly known as chronic hives. Notably, Dr. Rossman recounted in his October 30, 2001 letter to Dr. Zibelman that Sheridan had informed him that her attacks of chronic hives were often

4

accompanied by "shortness of breath, wheezing and a cough."

Sheridan's retained litigation expert, Lisa Maier, M.D., submitted an expert report, in which she opined that Sheridan has chronic beryllium disease. Dr. Maier did not examine Sheridan, instead basing her medical opinion solely upon a review of the medical records. Dr. Maier later testified at a subsequent deposition that Sheridan's chronic beryllium disease had caused chronic scarring in her lungs. Dr. Maier was unable to identify any other impairments attributable to chronic beryllium disease. Of particular importance here, Dr. Maier never opined that Sheridan's shortness of breath or decrease in pulmonary capacity were caused by chronic beryllium disease. And although Dr. Maier did observe that from 2001 to 2002 Sheridan's total lung capacity had decreased from ninety-two percent predicted to eighty-five percent predicted, which would be considered a significant change according to the American Thoracic Society, she noted that, even with this reduction in function, Sheridan's lung volumes continued to be within normal limits.

At her deposition, moreover, Dr. Maier was asked by defense counsel how Sheridan's chronic beryllium disease had progressed, to which she responded that Sheridan has:

> had some subtle decrements in her pulmonary function testing. She now does have some symptoms of shortness of breath, and Dr. Rossman, while he does not – is not sure whether those are related to chronic beryllium disease or not, is concerned enough that he wants her to come back to see him in six months, so my concern is the pulmonary function abnormalities that we – or the reductions that we mentioned earlier are probably attributed to [chronic beryllium disease], and that

5

it's possible that her symptoms now of shortness of breath could be, too. Defense counsel further inquired, "[d]o you agree that, based upon the information available today, that you cannot differentiate between hives or beryllium disease as the cause of [Sheridan's] reported shortness of breath within a reasonable degree of medical certainty?" Dr. Maier responded that '[w]ith the testing that [Dr. Rossman] has obtained, I would agree with that."

## II.

The District Court granted summary judgment in favor of Cabot, finding that Sheridan had not yet suffered a compensable injury under Pennsylvania law. Applying *Simmons v. Pacor, Inc.*, 674 A.2d 232 (Pa. 1996), the District Court determined that the chronic scarring of Sheridan's lungs, unaccompanied by any physical impairment, was not a compensable injury. The District Court found that the decline in pulmonary functioning did not qualify as an impairment because Sheridan's lung volumes remained within normal limits. As for Sheridan's shortness of breath, the District Court noted that, although it might qualify as a physical symptom or functional impairment, Sheridan nonetheless failed to raise an issue of fact as to the necessary causal link between her symptoms and chronic beryllium disease.

We exercise plenary review over the District Court's grant of summary judgment and apply the same standard as the District Court, i.e., whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiff.

6

*Fed. R. Civ. P.* 56(c); *Debiec v. Cabot Corp.*, 352 F.3d 117, 128 n. 3 (3d Cir. 2003) (citation omitted). We are required to "view the record and draw inferences in a light most favorable to the non-moving party." *Debiec*, 352 F.3d at 128 n.3 (citation omitted). The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. §1291.

**III.**

Under Pennsylvania law, a medical condition, even if termed a "disease," that is unaccompanied by discernable symptoms or physical impairment is not a compensable injury. *Simmons v. Pacor, Inc.*, 674 A.2d 232, 237 (Pa. 1996). In *Simmons*, plaintiffs had sued various defendants because of exposure to asbestos while serving in the military or in civilian employment. While each of the plaintiffs had asbestos-caused pleural thickening, the functioning of their lungs was not impaired, and none of the plaintiffs was suffering from cancer. *Id.* at 234. Plaintiffs argued that they were entitled to damages because the pleural thickening put them at a significantly greater risk of contracting asbestosis and lung cancer. The Pennsylvania Supreme Court rejected this argument, holding that asymptomatic pleural thickening is not a sufficient physical injury to warrant damages. The Court emphasized, moreover, that plaintiffs were free to initiate lawsuits "when symptoms develop and physiological impairment begins." *Id.* at 237.

Cabot leans heavily on *Simmons,* arguing that in this case, too, Sheridan's chronic scarring of the lungs is asymptomatic, unaccompanied by a discernable physical or

7

functional impairment. We agree. The decline in pulmonary functioning is not a sufficient physical injury, inasmuch as Sheridan's pulmonary functioning remained within normal limits, as testified to by both Drs. Rossman and Maier. More than that, Dr. Maier did not testify that the decline in pulmonary functioning, even if significant, was definitively caused by chronic beryllium disease, as opposed to Sheridan's other medical conditions.

In addition, the Pennsylvania courts have consistently held that shortness of breath, alone, is not a compensable injury under *Simmons* because it is not a discernable physical symptom, a functional impairment, or a disability. *See, e.g., Ryan v. Asbestos Corp. LTD*, 829 A.2d 686, 688 (Pa. Super. Ct. 2003); *Quate v. American Standard, Inc.*, 818 A.2d 510, 513 (Pa. Super. Ct. 2003); *Taylor v. Owens-Corning Fiberglas Corp.*, 666 A.2d 681, 687 n.2 (Pa. Super. Ct. 1995). What these cases properly recognize is that breathlessness is also associated with any number of unrelated medical ailments, which is to say that a causal link must be established between the diagnosis of chronic beryllium disease and the shortness of breath symptom. Here, Sheridan has failed to submit evidence tending to establish this essential nexus. As noted above, neither Dr. Rossman nor Dr. Maier could testify that any of Sheridan's symptoms, including her shortness of breath, were caused by her chronic beryllium disease, and not her chronic hives or other unrelated medical ailments. Without such evidence, Sheridan's shortness of breath does not qualify as a physical or functional impairment. Sheridan's chronic scarring, then, is asymptomatic,

which, pursuant to *Simmons*, is not a compensable injury under Pennsylvania law.

Sheridan, however, tries to differentiate this case from the clear strictures of *Simmons* by distinguishing her chronic beryllium disease from asbestosis or other asbestos-related conditions. This argument fails for at least two reasons. First, Sheridan does not appear to have raised this argument before the District Court. As such, she is barred from raising it for the first time on appeal. *Ross v. Hotel Employees and Restaurant Employees*, 266 F.3d 236, 242 (3d Cir. 2001) ("Generally, absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal.") (citation omitted).

Second, even if we were inclined to consider this argument, we find it lacks merit. While it is true that *Simmons* and its progeny dealt with asbestos-related impairments, not chronic beryllium disease, we see no reason to limit *Simmons* to the asbestos context. Sheridan, for her part, relies heavily on *Murray v. Hamot Medical Center*, 633 A.2d 196 (Pa. Super. Ct. 1993), *alloc. denied*, 658 A.2d 796 (Pa. 1994), in which the Pennsylvania Superior Court held that the statute of limitations on plaintiff's cause of action for HIV began to run on the date when plaintiff discovered the HIV-infection. The court reasoned that an HIV infection–even if asymptomatic-"entails changes in and limitations to [one's] lifestyle" due to the necessity of taking steps to avoid further transmission and to begin treatment to combat the virus' rapid reproduction. *Id.* at 202.

We believe that Sheridan's situation more closely resembles the facts in *Simmons*

than those of *Murray*.  Sheridan's chronic scarring, like pleural thickening, is asymptomatic.  This holds true notwithstanding the distinction proffered by Sheridan between pleural thickening and chronic scarring of the lungs, to wit, that pleural thickening affects the membranes surrounding the lungs, not the lungs themselves.  What matters is not the location of the scarring, but rather whether or not the disease is symptomatic.  Where, as here, that critical showing has not been made, the distinction relied on by Sheridan is without a difference.  Furthermore, the dramatic changes in and limitations to one's lifestyle as a result of HIV, namely the need to avoid transmission and obtain preemptive medical treatment, find no parallel with chronic beryllium disease, at least with respect to Sheridan, who has not required any medical treatment or shown substantial signs of progressive deterioration.

Upon careful review of the record, we conclude that Sheridan has failed to establish a compensable injury under Pennsylvania law.[1]  Accordingly, we will AFFIRM the District Court's grant of summary judgment in favor of Cabot Corp.

---

[1] Cabot also argues that the Pennsylvania statute of limitations bars Sheridan's complaint. Because we conclude that Sheridan has not suffered a compensable injury, we do not address that issue.